UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
DOUGLAS ABERNATHY a/k/a :
RAIN DREAMWALKER, *pro se*, :
 :
                         Plaintiff, : **MEMORANDUM & ORDER**
 : 12-CV-6072 (DLI)(VVP)
                        -against- :
 :
FRANK STRADA, :
 :
                         Defendant. :
------------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* Plaintiff Douglas Abernathy a/k/a Rain Dreamwalker ("Plaintiff"),[1] who practices a Native American religion, filed the instant action asserting claims under *Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388 (1971) and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* against Frank Strada ("Strada" or "Defendant"), Warden for the Metropolitan Detention Center in Brooklyn, New York ("MDC"). (*See generally* Complaint ("Compl."), Dkt. Entry No. 1.) Plaintiff contends that his First Amendment free exercise rights were violated by Defendant's denial of his request to transfer to a correction facility that could accommodate Plaintiff's religious needs, including access to a "sweat lodge, drums, flutes, rattles, literature, [and] [sufficient] pipe tobacco for proper pipe ceremony[ies] . . . ." (Pl.'s Expedited Pet., Dkt. Entry No. 9 at 2-3.)

Defendant moves for summary judgment (*see* Def.'s Mem. of L. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), Dkt. Entry No. 36), which Plaintiff opposes (*see* Pl.'s Mem. of L.

---

[1] *Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (citation and internal quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases there is a "greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (citation omitted).

in Opp'n, Dkt. Entry No. 36-3). For the reasons set forth below, Defendant's motion is granted and this action is dismissed in its entirety.

## BACKGROUND

Unless otherwise indicated, the facts contained herein are drawn from Defendant's uncontested Rule 56.1 Statement of Material Facts.[2] (*See* Def.'s Stmt. of Mat. Facts ("Def.s' 56.1"), Dkt. Entry No. 36-2.)

Plaintiff was incarcerated at the MDC at the time that he filed the instant action. (Def.'s 56.1 ¶ 4.) During Plaintiff's incarceration, Defendant served as the MDC Warden. (*Id.* ¶ 7.) Prior to, and during his incarceration, Plaintiff practiced a Native American religion. (*Id.* ¶ 6.)

The Federal Bureau of Prisons ("BOP") has promulgated rules and regulations regarding the religious beliefs and practices of inmates for the stated purpose of providing "inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution." (*Id.* ¶ 8.) Each correctional facility is required to "develop an Institution Supplement for operating religious programs and activities." (*Id.* ¶ 11.) The MDC's Institution Supplement indicates that the ritual use of tobacco is authorized only in certain designated areas when available. (*Id.* ¶ 14.) The MDC Institution Supplement further specifies

---

[2] In cases involving a *pro se* litigant, Local Civil Rule 56.2 requires that: "[a]ny represented party moving for summary judgment against a party proceeding *pro se* shall serve and file as a separate document, together with the papers in support of the motion, a 'Notice to Pro Se Litigant Opposing Motion for Summary Judgment' in the form indicated below." Local Civ. R. 56.2. "The notice referred to in the rule advises the *pro se* litigant of the possibility that the complaint may be dismissed and informs the litigant that she must submit evidence countering the facts asserted by the defendant and raising issues of fact for trial." *Arum v. Miller*, 304 F. Supp. 2d 344, 349 (E.D.N.Y. 2003). Defendant served the appropriate notification on Plaintiff under Local Civil Rule 56.2 (*see* Def.'s Notice, Dkt. Entry No. 36-1); however, Plaintiff failed to submit a Rule 56.1 Statement. Nonetheless, courts are given "broad discretion to overlook a party's failure to comply with local rules" and may "opt to conduct an assiduous review of the record." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation omitted). Therefore, facts that Plaintiff disputed in his opposition will be deemed "contested" for resolution of the instant motion.

that, "[s]weat [l]odge and outdoor worship services are not available at MDC Brooklyn because of architectural design restraints." (*Id*. ¶ 15.)

The BOP maintains an "Administrative Remedy Program," whereby inmates may seek relief for "an issue relating to any aspect of his/her own confinement." (*Id*. ¶ 16.) Plaintiff took advantage of these grievance procedures. On September 12, 2012, Plaintiff submitted a Request for Administrative Remedy to Strada, which was assigned case number 704915 ("Request 704915"). (*Id*. ¶ 23.) In Request 704915, Plaintiff complained that his First Amendment free exercise of religion rights were being violated because the MDC did not have a sweat lodge. (*Id*. ¶ 24.) He requested transfer to a facility with a sweat lodge. (*Id*.) On September 28, 2012, Strada responded in writing to Plaintiff ("9/28/12 Warden Response"). (*Id*. ¶ 26.) Strada advised Plaintiff that construction of a sweat lodge at the MDC was not possible, "based on the architectural design and the location of the institution" and that, "alternatively, other American Indian services were available to him and that Plaintiff may refer to the Religious Services schedule posted in his housing unit." (*Id*. ¶¶ 26-28 (alterations omitted).) The BOP Regional Director denied Plaintiff's appeal. (*Id*. ¶¶ 29-33.) Plaintiff then filed an appeal to the BOP's Central Office. (*Id*. ¶ 34.) In that appeal, Plaintiff complained, for the first time, about: (1) an unequal distribution of religious resources; (2) a lack of drums, flutes, rattles, and religious literature; (3) a lack of a religious room; (4) the absence of postings about religious activities; (5) insufficient amounts of tobacco for ritual use; and (6) that the facilities at the MDC were inadequate for religious services. (*Id*. ¶ 35.) While this appeal was pending, Plaintiff filed two additional Requests for Administrative Remedy. (*Id*. ¶¶ 36-62.) Notably, none of Plaintiff's grievances allege that Strada interfered with Plaintiff's free exercise rights.

On March 5, 2013, Plaintiff was transferred from the MDC to a halfway house. (*Id.* ¶ 63.) On June 28, 2013, Plaintiff was released from BOP custody. (*Id.* ¶ 64.) On March 18, 2014, BOP's Central Office notified Plaintiff that, due to his release from BOP custody, his appeal of the 9/28/12 Warden Response and his subsequent Requests for Administrative Remedy were moot. (*Id.* ¶¶ 65-66.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587.)

## II. RLUIPA Claim

The Court construes the complaint to allege a RLUIPA claim against Defendant. Under the RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of [Title 42], even if the burden results

> from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). A facility or institution is defined as "owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State." 42 U.S.C. § 1997(1)(A). A "State" is defined as "any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, or any of the territories and possessions of the United States." 42 U.S.C. § 1997(4). Thus, a plaintiff cannot allege a RLUIPA claim against a federal officer. *See Ish Yerushalayim v. U.S. Dep't of Corrs.*, 374 F.3d 89, 92 (2d Cir. 2004) ("Because RLUIPA clearly does not create a cause of action against the federal government or its correctional facilities, [plaintiff] has no RLUIPA cause of action.") Accordingly, Defendant's motion for summary judgment on the RLUIPA claim is granted.

## III. Exhaustion Requirement

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to *Bivens* claims. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even when there is a disputed issue of fact. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("[Plaintiff] is incorrect that the presence of disputed material facts converts exhaustion into a jury issue.").

"[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. *See Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Courts must construe the exhaustion requirement strictly because "[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction" and "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 95.

The BOP has established a four-step administrative remedies process that federal inmates must follow to meet the PLRA's exhaustion requirement. First, an inmate must informally present an issue of concern to the staff, who shall then attempt to resolve the issue before that inmate submits a Request for Administrative Remedy. 28 C.F.R. § 542.13(a). Second, if the inmate is dissatisfied with the informal resolution of his issue of concern, the inmate must submit a formal written Administrative Remedy Request on a BP-9 form 20 calendar days following the date on which the basis for a remedy request occurred. 28 C.F.R. § 542.14(a). Third, an inmate who is not satisfied with the warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 calendar days of the date of the warden's signed response. 28 C.F.R. § 542.15. Finally, an inmate who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel at the Central Office of Appeals within 30 calendar days of the Regional Director's signed response. *Id.* The inmate must use the appropriate forms, which are obtained from the prison staff. 28 C.F.R. §§ 542.14(c), 542.15(b).

Turning to the instant action, Plaintiff was incarcerated at the time he filed his complaint and thus, was required to exhaust his complaints through the BOP's four-step administrative

remedies process. Although he filed numerous complaints, he did not complete the four-step process with respect to any of them prior to commencing this action. It is well settled that exhaustion under the PLRA must be completed prior to filing a federal action, and steps taken to pursue administrative exhaustion during the pendency of a federal action will not satisfy the PLRA exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001); *Burgos v. Craig*, 307 F. App'x 469, 470 (2d Cir. 2008) (explaining that to satisfy the PLRA exhaustion requirement for a *Bivens* claim, exhaustion of the claim through the BOP's four-step process "must be completed before suit is filed, and completing the exhaustion requirements only after filing suit is insufficient").

The Court construes Plaintiff's opposition to contend that he should be excused from the exhaustion requirements because, given the short duration of his sentence, he would have been released before the exhaustion process was completed. This argument lacks merit. It is well settled that the PLRA's exhaustion requirement cannot be excused based upon a plaintiff's belief that pursuing administrative remedies would be ineffective or futile. *See Giano v. Goord*, 250 F.3d 146, 150-51 (2d Cir. 2001) ("[T]he alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so.")

Finally, none of the exceptions to the PLRA exhaustion requirement are applicable to the instant action.[3] Under these circumstances, the Court must dismiss Plaintiff's *Bivens* claim for failure to satisfy the PLRA exhaustion requirement. *See Johnson v. Rowley*, 569 F.3d 40, 44-45

---

[3] Compliance with the exhaustion requirement is excused when: (1) administrative remedies are not available; (2) defendants have either waived this defense or acted so as to estop them from raising the defense; (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, otherwise justify the prisoner's failure to comply with the exhaustion requirement. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175-76 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). Plaintiff has not asserted any of these grounds in his submissions.

(2d Cir. 2009) (per curiam) (affirming dismissal of a prisoner's First Amendment claim for failure to exhaust his claim as required under the PLRA); *see also McDowall v. MDC*, 2010 WL 3521879, at *2 (E.D.N.Y. Aug. 31, 2010) (dismissing prisoner's *Bivens* claim for lack of administrative exhaustion).

## IV. Merits

As a final matter, even if the claims were properly exhausted, they lack merit. There are no allegations that Defendant personally interfered with Plaintiff's religious rights. "Government officials cannot be held liable unless they themselves engaged in unconstitutional conduct; it is not enough for a defendant to simply have held a high position of authority." *Guo Hua Ke v. Morton*, 2012 WL 4715211, at *4 (S.D.N.Y. Sept. 30, 2012) (internal quotations and citation omitted). Furthermore, it is well settled that the denial of administrative grievances by prison officials is an insufficient basis upon which any plaintiff can establish the requisite personal involvement to sustain a constitutional claim against those officials. *See Jones v. Fed. Bur. of Prisons*, 2013 WL 5300721, at *9 (E.D.N.Y. Sept. 19, 2013) (dismissing plaintiff's *Bivens* claim against the warden because "the simple denial of a grievance [by the warden] does not constitute personal involvement"); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("The fact that Superintendent Greiner affirmed the denial of plaintiff's grievance—is insufficient to establish personal involvement . . . ."). Accordingly, Defendant's motion for summary judgment on the *Bivens* claim is granted.

## CONCLUSION

For the reasons set forth above, Defendant's summary judgment motion is granted and this action is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
       March 6, 2015

/s/
DORA L. IRIZARRY
United States District Judge